[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs bring this action for a temporary and a permanent injunction.[1] This matter was heard on the question of the issuance of the permanent injunction.
FACTS
The parties have stipulated to the following facts for the purpose of this action for injunctive relief:
"1. Judge Aaron Ment has been, since September 17, 1984, the Chief Court Administrator within the Judicial Department of the State of Connecticut.
2. The Defendant, Joseph D'Alesio has been, since April 8, 1988, the Director of Operations, Superior Court, and charged with, inter alia, the responsibility to supervise the Deputy Director of Court Support Services.
3. The Defendant, Jack Saxe has been, since April 15, 1988, the Deputy Director of Court Support Services working directly under the supervision of the Chief of Court Operations and responsible for, inter alia, the supervision of the manager of Court Transcript Services.
4. Since September 25, 1987, the Defendant, Maureen Horgan [Horgan] has been the Manager of Court Transcript Services. Maureen Horgan does not have stenographic skill or training. Neither the job description nor her duties requires it. Her duties are set forth in the attached job description as Exhibit A-1.[2] Official Court Reporter III is included in the reference to Official Court Reporters as set forth in said Exhibit A-1. She does not engage in the technical supervision of providing a court record.
The Official Court Reporter III is the first line supervisor for the Court Reporters and Court Monitors. Maureen Hogan [sic] is neither a Court Reporter nor a Court Monitor.
The minimum qualifications for the position of Manager of Transcript Services are: six years experience in office management or in a supervisory capacity within the Judicial Department, or a Bachelor's Degree and two years experience CT Page 303 in office management or in a supervisory capacity within the Judicial Department.
5. On or about October 11, 1989 the Defendant, Maureen Horgan, directed to be sent to each Official Court Reporter a Notice of Job Opening/Promotional Opportunity for the position of "Official Court Reporter III", copy of which is appended hereto as Exhibit A and incorporated herein (referring to the document attached to this document) as if fully set forth.
6. Said Notice of Job Opening/Promotional Opportunity, appended hereto as Exhibit A, is restricted to those job applicants who have been employed a minimum number of five years as a "Court Reporter II." The application period for said "promotional opportunity" closed on November 8, 1989. The job description for Court Reporter II is appended hereto as Exhibit A-2 and incorporated herein as if fully set forth
7. Plaintiff, Barbara Cutter became employed by the Judicial Department as a Court Monitor Trainee on June 14, 1985 (see attached job descriptions Exhibits C1 and C2). All these exhibits are also incorporated by reference as if fully set forth herein.
8. Plaintiff, Donna Mainville became employed by the Judicial Department as a Court Monitor Trainee on September 30, 1983, and a Court Monitor on October 12, 1984.
9. Plaintiff, Barbara Elias became employed by the Judicial Department as a Court Monitor on January 2, 1976.
10. All three Plaintiffs have submitted applications for the position of Official Court Reporter III. The Defendants, as of this date, have not informed the Plaintiffs that their applications are untimely.
11. All three Plaintiffs were ineligible for the position of Court Reporter III in consequence of not having five years experience as Court Reporter II.
12. Court Monitors comprise approximately 39% of the full time court reporter and court monitor work staff in the Hartford/New Britain J.D. and G.A. Courts.
13. It is a rough approximation, based upon a review of the Official Court Reporter's Assignment Schedule, that in 1986, Court Monitors were assigned to 18% of the Part A Criminal Court workload and in 1989 this figure was 57% for the entire year. "Workload" for this purpose means that portion CT Page 304 of total Court days for Part A Criminal Court cases for which monitors were assigned. Monitors were assigned to a majority of the Part A Criminal Court Workload for 1987 and 1988.
The increased percentage is due to the construction of the new Courthouse at 101 Lafayette Street, Hartford, which has better acoustics in its criminal courtrooms and built-in audio equipment. The 101 Lafayette Courthouse was opened on August 4, 1986.
The increased percentage is also due to the requests of monitors to be assigned there for the convenience of not having to carry or move heavy audio equipment to the civil courtrooms at 95 Washington Street, Hartford. In addition, the inferior acoustics at 95 Washington Street impairs the monitors' ability to make accurate records of proceedings.
Court Monitors now record approximately 90% of Hartford Superior Court Family Court matters. This has been done in Rooms 314 and 300 and more recently also at Rooms 304A and 307, all at 94 Washington Street.
The reasons for this include the fact that Rooms 314, 304A and 307 are relatively small and have good acoustics. Per diem monitors are among those assigned there and trials generally do not exceed one day.
Room 300 is a larger courtroom but is used mostly for the calendar call, uncontested divorces, and announcing agreements. Transcripts when requested are generally fairly short.
In both Rooms 314 and 300 the audio equipment is kept there and the rooms are locked when not in use. This avoids the need to move or carry heavy audio equipment to these rooms.
14. Since 1986 a Court Monitor has, in connection with the examination for the Court Reporters, read a portion of a prepared script and has corrected examinations according to that script. In so doing, she was at all times instructed and supervised by the Official Court Reporter who prepared and administered the examination.
15. Paragraphs 15 and 16 of the Complaint involve either quotations of a statute or a court rule, the originals of which speak for themselves. Any further matters asserted in said paragraphs are denied by the Defendants.
Paragraph 17 and all other allegations of the Complaint are denied.[3]
CT Page 305
The parties disagree as to what weight, if any, should be given the information contained in this stipulation in resolving the issues in this case.
Defendants do not waive defenses and objections based upon sovereign immunity and legal insufficiency of the Complaint and Plaintiffs' other pleadings.
The parties also reserve the right to offer evidence if necessary." Evidence was taken from which the court finds:
The plaintiffs record courtroom proceedings. When requested they prepare transcripts of their recordations. All the plaintiffs have served in the Supreme, Appellate and superior court. In the superior court each has served in juvenile, housing, civil, family and criminal.
A transcript is to be an accurate verbatim reproduction of what occurred verbally in the courtroom.
The three plaintiffs are intelligent, well-educated, articulate and personable. None of them can read "steno notes" or court reporter notes. Steno or court reporter notes are those taken by a court reporter either by "pen"[4] or on a steno machine which makes ink marks on paper. Those marks are read either by a person and typed into transcript form or are reproduced in transcript form by electronic and computer equipment.
Cutter, Elias and Mainville have backgrounds which could lead one to believe that they could be at least adequate administrators.
Horgan's job does not require the same kind of skills that are required of either a Court Reporter II or III.
Ten percent of a Court Reporter's III job is to design coordinate and administer exams for court reporter applicants.
The parties are in basic agreement that the sole question presented is whether or not "the distinction being drawn by the Defendants between `court monitors' and `court reporters 2' [sic] in determining eligibility for . . . [the job] of `court reporter 3' [sic] is arbitrary and capricious."
Our system effectively uses both court reporters and court monitors. This case is not about whether one method of
recordation is in one or more ways better than the other. It is not about the length of the training program for each. CT Page 306 It is not about the skills necessary to adequately perform either job. The case is only about the experience and skills which are reasonable to require of a Court Reporter III. That job requires a person to oversee all reporting activities within this judicial district and to act as a liaison to the Board of Examiners with responsibilities in examination, preparation and policy implementation.
As a practical matter she must be able to help both inexperienced or troubled court monitors and court reporters under her jurisdiction in doing their reporting jobs.
The evidence is clear that a Court Reporter II with five years experience and a minimum of practice can fully aid both. The evidence is also clear that none of the plaintiffs with all of their education and experience can help fledgling Court Reporters II. It is also clear monitors cannot prepare a court reporter test but a court reporter can prepare and conduct a court monitor test.
The administrative task of establishing meaningful requirement for each job need not be performed with perfection, as long as it establishes a rational basis for the requirements it does not violate the equal protection clauses of either the United States or Connecticut constitutions. State Management Assn. of Conn. v. O'Neill, 204 Conn. 746, 754.
There is a rational basis for the distinction between Court Reporters II and Court Monitors in determining eligibility for the job of Court Reporter III. The plaintiffs have not sustained their burden of proof that the defendants' actions were arbitrary or capricious.
Judgment for defendants.
N. O'NEILL, J.
APPENDIX G Eff: 6/5/87 CT Page 307 EEO: 1 BU: 41
DIVISION: Superior Court
CLASS TITLE: Manager of Court Transcript Services
CLASS DEFINITION: Under the direction of the Director of Operations, Superior Court, manages the statewide court reporter and court recording monitor system.
EXAMPLES OF DUTIES: Oversees the operations of court Reporters offices on a statewide basis; insures that adequate court reporter and court recording monitor staff and equipment are available on-site to service the judges' and referees' needs; assigns court reporters and court recording monitors; supervises Official Court Reporters in dealing with standing problems, personnel matters and the timely production of transcripts; interviews and recommends for appointment, transfer, or termination all court reporters and recording monitors; recommends and implements programs, policies and procedures to assure compliance with division goals and standards, such as employee recruitment and training, modernizing equipment and proposed legislation; insures the maintenance or replacement of equipment and supplies; performs other related duties as required.
MINIMUM QUALIFICATIONS: Six (6) years experience in office management or in a supervisory capacity within the Judicial Department or a Bachelor's degree and two (2) years experience in office management or in a supervisory capacity within the Judicial Department.
EXHIBIT A
October 11, 1989
PLEASE POST IMMEDIATELY
 NOTICE OF JOB OPENING PROMOTIONAL OPPORTUNITY OFFICIAL COURT REPORTER III FULL-TIME JUDICIAL DISTRICT OF HARTFORD/NEW BRITAIN
CLASS DEFINITION: Under the direction of the Manager of Court Transcript Services oversees all reporting activities within the Harford/New Britain Judicial District and acts as a liaison to the Board of Examiners with responsibilities in examination preparation and policy implementation. CT Page 308
EXAMPLES OF DUTIES: Determines the assignment of reporting personnel to court facilities; may determine transcription priorities and deadlines; trains new staff in specialized court procedures; records staff time; approves and assigns vacation and personal leave; answers inquiries regarding the status of outstanding transcripts; interviews and hires per diem reporters; as liaison to Board of Examiners, reviews and recommends existing court reporter and court recording monitor qualifications and revises, if necessary; prepares and administers examinations; may record and transcribe verbatim testimony during legal proceedings; performs other related duties as required.
MINIMUM QUALIFICATIONS: Five (5) years employment as a Court Reporter II or above.
STARTING ANNUAL SALARY: $38,018
SUBMIT APPLICATIONS TO: Attorney Maureen Horgan Manager of Court Transcript Services Court Operations Office of the Chief Court Administrator 75 Elm Street Drawer N, Station A Hartford, CT 06106
NO LATER THAN: November 8, 1989
 STATE OF CONNECTICUT — JUDICIAL DEPARTMENT AN EQUAL OPPORTUNITY EMPLOYER
 EXHIBIT A1 P-2/82 EEO: 6 BU: 43
DIVISION: Superior Court
CLASS TITLE: Court Reporter II
CLASS DEFINITION: Under the supervision of an Official Court Reporter records all transcribes verbatim testimony in formal and informal legal proceedings.
EXAMPLE OF DUTIES: Records verbatim testimony by operating stenographic equipment; operates a stenographic machine and records court hearings; transcribes court proceedings upon request; types memoranda, letters, vouchers and other correspondence for judges of the superior court; reads notes as to recommendations, dispositions and other court CT Page 309 actions and outcomes for judge and other related court agencies and officers; deals with attorneys and other members of the public seeking transcripts and information; performs secretarial duties, as assigned; performs other related duties as required.
MINIMUM QUALIFICATIONS: Certification of the Board of Examiners of the State of Connecticut as a Court Reporter II.
 EXHIBIT B P-2/82 EEO: 6 BU: 43
DIVISION: Superior Court
CLASS TITLE: Court Recording Monitor Trainee
CLASS DEFINITION: Under the supervision of an Official Court Reporter, receives on-the-job training and assumes increasing responsibility for providing transcript services by electronically recording proceedings.
EXAMPLES OF DUTIES: Receives training and assumes increasing responsibility for: operating a tape recording machine to record legal proceeding; types and transcribes proceedings upon request; types memoranda, letters, vouchers and other correspondence; plays back tapes of recommendations, dispositions and other court actions upon request; deals with attorneys and other members of the public seeking transcripts and information; performs clerical and secretarial duties as assigned; performs other related duties as required.
MINIMUM QUALIFICATIONS: One year of experience involving typing.
SPECIAL REQUIREMENTS: Ability to type 40 wpm.
 EXHIBIT C1 P-2/82 EEO: 6 BU: 43
DIVISION: Superior Court
CLASS TITLE: Court Recording Monitor
CLASS DEFINITION: Under the supervision of an Official Court Reporter, and the Coordinator of Court Transcript Services, provides transcript services by electronically recording proceedings. CT Page 310
EXAMPLES OF DUTIES: Operates a tape recording machine to record legal proceedings; types transcripts, memoranda, letters, vouchers and other correspondence; plays back tapes of recommendations, dispositions and other court actions upon request; deals with attorneys and other members of the public seeking transcripts and information; trains new staff; performs clerical and secretarial duties as assigned; performs other related duties as required.
MINIMUM QUALIFICATIONS: Completion of training program and one (1) year of experience as a Court Recording Monitor Trainee. An incumbent classified as a Court Recording Monitor Trainee shall be advanced to Court Recording Monitor upon their first anniversary with the department and a service rating of satisfactory of better, effective June 25, 1982.
SPECIAL REQUIREMENTS: Ability to type 60 wpm.
 EXHIBIT C2 P: 6/1/87 EEO: 6 BU: 43
DIVISION: Superior Court
CLASS TITLE: Court Recording Monitor
CLASS DEFINITION: Under the supervision of the Official Court Reporter of the Judicial District, is responsible for recording verbal testimony during courtroom proceedings using electronic recording equipment.
EXAMPLES OF DUTIES: Records verbal testimony during court proceedings; sets up and tests equipment; monitors the recordings using earphones; maintains proper notes of proceedings, including names of participants, case/dockets number tape and log numbers; clearly marks notes for recall testimony; prepares transcripts, and appeal papers; assembles and maintains records and files; performs clerical duties, as assigned, performs other related duties as required.
MINIMUM QUALIFICATION: Two (2) years of clerical experience and ability to type 50 wpm.